IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

DAVIDA MCMILLIAN,
    Plaintiff,

v.                                                        Civil No. 3:20cv271 (DJN)

KING & QUEEN COUNTY SCHOOL
BOARD, *et al.*,
    Defendants.

**MEMORANDUM OPINION**

Plaintiff Davida McMillian ("Plaintiff") brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1983 against Defendants the King & Queen County School Board (the "Board") and Carol B. Carter, Ed.D. ("Dr. Carter"), (collectively, "Defendants"), alleging that Defendants discriminated against her, because of her race and her association with the National Association for the Advancement of Colored People ("NAACP"), by failing to renew her employment contract for the 2019-2020 school year.

This matter now comes before the Court on Defendants' Motion to Dismiss (ECF No. 11), which moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Count II of Plaintiff's First Amended Complaint for failure to state a claim. For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss (ECF No. 11), and DISMISSES WITH PREJUDICE Count II of Plaintiff's First Amended Complaint (ECF No. 9) to the extent it states a claim against the Board.

## I. BACKGROUND

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept Plaintiff's well-pleaded factual allegations as true, though the Court need not accept Plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). With this principle in mind, the Court accepts the following facts.

### A. Alleged Discrimination by Defendants

Plaintiff worked for the Board for a total of fourteen years. (1st Am. Compl. ("Am. Compl.") (ECF No. 9) ¶ 7.) During the four years that immediately preceded her separation, Plaintiff served as the Lead Cafeteria Manager. (Am. Compl. ¶ 7.) Plaintiff performed that job with distinction, earning a Certificate of Appreciation from Superintendent Dr. Carter at a June 2018 meeting, and, in August 2018, receiving Dr. Carter's praise for an article in the local newspaper. (Am. Compl. ¶ 8.)

However, before the 2018-2019 school year, Dr. Carter became aware that Plaintiff — an African-American woman — served as the provisional Vice-President for the local NAACP chapter. (Am. Compl. ¶¶ 2, 10.) Moreover, Dr. Carter knew that the NAACP chapter discussed citizen concerns respecting Dr. Carter's treatment of African-American administrators, staff and students at the school. (Am. Compl. ¶ 10.) Dr. Carter's knowledge of Plaintiff's association with the NAACP became apparent during a budget meeting when Dr. Carter confronted Plaintiff and said: "You need to tell me when and where you are having NAACP meetings."[1] (Am. Compl. ¶ 11.) The tone of Dr. Carter's voice — coupled with the irrelevance of the comment in

---

[1] As alleged in the First Amended Complaint, the meeting took place "approximately six months before the 2018-2019 school year." (Am. Compl. ¶ 11.) Plaintiff clarified in her Opposition to the Motion to Dismiss that the confrontation likely occurred during a break at the February 2018 budget meeting. (Mem. in Opp. to Def.'s Mot. to Dismiss ("Pl.'s Resp.") (ECF No. 17) at 8, n. 3.)

2

the context of a budget meeting — conveyed to Plaintiff that Dr. Carter did not appreciate Plaintiff's NAACP membership. (Am. Compl. ¶ 11.)

Subsequently, Plaintiff communicated with a black school board member about Dr. Carter's comments to her. (Am. Compl. ¶ 14.) That school board member said that Dr. Carter had made similar comments to the board member. (Am. Compl. ¶ 14.)

Beginning in the Fall of 2018, Dr. Carter began to undermine Plaintiff's job performance. (Am. Compl. ¶ 15.) Specifically, Dr. Carter ostracized Plaintiff by not inviting her to administrative meetings that Plaintiff had previously attended and by no longer speaking to her. (Am. Compl. ¶ 15.) Additionally, in January 2019, Dr. Carter asked a cafeteria staffer if the staffer or other co-workers had ever experienced any issues with Plaintiff. (Am. Compl. ¶ 15.) The staffer replied in the negative. (Am. Compl. ¶ 15.)

In April 2019, Plaintiff's supervisor — whom Dr. Carter had recently appointed — wrote a Letter of Reprimand against Plaintiff based on a false claim that Plaintiff had improperly investigated a fellow employee and then issued unauthorized discipline to that employee. (Am. Compl. ¶ 16.) In truth, Plaintiff committed neither offense, as evidenced by the fact that the supervisor issued the Letter of Reprimand two months after the alleged incident took place. (Am. Compl. ¶ 16.)

On May 8, 2019, Plaintiff had her annual performance review. (Am. Compl. ¶ 17.) Unlike prior reviews, Plaintiff received criticism for alleged communication problems with her staff. (Am. Compl. ¶ 17.) And again, her supervisor renewed the false claim about unauthorized discipline. (Am. Compl. ¶ 17.) Ultimately, Plaintiff's superiors prescribed a four-week improvement plan, with a target completion date of June 5, 2019. (Am. Compl. ¶ 17.)

Although Plaintiff complied with the terms of the improvement plan, Defendants never afforded her the opportunity to complete it. (Am. Compl. ¶ 18.) Instead, by letter dated May 21, 2019, Dr. Carter advised Plaintiff that Defendants were not renewing Plaintiff's contract for the upcoming school year. (Am. Compl. ¶ 18.) The decision not to renew Plaintiff's contract represented Defendants' "very first opportunity" to take retaliatory action against Plaintiff because of her membership in the NAACP. (Am. Compl. ¶ 31.) When Plaintiff asked Dr. Carter why Defendants decided against renewing her contract (the letter provided no reason for the decision), Dr. Carter responded that Defendants had decided to go in a "different direction" with the food service department. (Am. Compl. ¶¶ 18, 20.) On the same day that Dr. Carter and Plaintiff spoke about the non-renewal of her contract, Dr. Carter offered Plaintiff's job to a white employee with far less experience than Plaintiff. (Am. Compl. ¶ 19.)

After Plaintiff left her position with the Board, she applied for unemployment benefits. (Am. Compl. ¶ 20.) Although Plaintiff's non-renewal letter provided no basis for the Board's decision, and despite Dr. Carter's statement that Defendants were merely going in a "different direction," the Board advised the Virginia Employment Commission that Plaintiff had been terminated, because she had conducted an unauthorized investigation of an employee and had made negative comments about an employee. (Am. Compl. ¶ 20.) Neither assertion proved true, and the Commission awarded benefits to Plaintiff. (Am. Compl. ¶ 20.)

### B. Plaintiff's Amended Complaint

On April 14, 2020, Plaintiff filed her initial Complaint (ECF No. 1) against Defendants and, after Defendants moved to dismiss, Plaintiff filed her Amended Complaint (ECF No. 9) on July 6, 2020. In her Amended Complaint, Plaintiff raises two counts for relief based on the above allegations. In Count I, Plaintiff alleges that the Board discriminated against her based on

her race in violation of Title VII of the Civil Rights Act of 1964. (Am. Compl. ¶¶ 23-27.) In Count II, Plaintiff alleges that the Board and Dr. Carter retaliated against her for participating in and being an active member of the NAACP.[2] (Am. Compl. ¶¶ 28-34.) Specifically, Plaintiff alleges that participation in the NAACP constitutes a protected activity within the meaning of the First Amendment, and that, because of her participation in the NAACP, Defendants retaliated against her by not renewing her contract of employment for the 2019-2020 school year. (Am. Compl. ¶¶ 28-34.) As such, Plaintiff brings Count II under 42 U.S.C. § 1983. (Am. Compl. ¶ 29.)

From these counts, Plaintiff seeks, among other things, a declaratory judgment that Defendants' actions violated Title VII and the First Amendment; an award of compensation for loss of money and other benefits; an award for front pay and back pay; and an award for punitive damages against Dr. Carter. (Am. Compl. at 9.)

### C. The Board's Motion to Dismiss

In response to Plaintiff's Amended Complaint, on July 20, 2020, Defendants filed their Motion to Dismiss (ECF No. 11), moving to dismiss Count II of Plaintiff's Amended Complaint for failure to state a claim. In support of their Motion, Defendants argue that Plaintiff fails to allege facts that establish a causal nexus between Plaintiff's alleged protected activity and the nonrenewal of her contract. (Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") (ECF No. 12) at 1-2.) In any event, Defendants argue that Count II fails as against the Board, because Plaintiff cannot show that the constitutional violation at issue resulted from a policy or custom of discrimination. (Defs.' Mem. at 8-10.) Moreover, Defendants contend that Count II fails as

---

[2] As discussed below, Plaintiff now agrees to dismiss Count II against the Board. (Pl.'s Resp. at 1, n. 1.)

5

against Dr. Carter, because Dr. Carter enjoys qualified immunity. (Defs.' Mem. at 10-11.) On that score, Defendants do not argue that the constitutional violation alleged — if proven — fails for want of being clearly established. (Defs.' Mem. at 10-11.) Instead, Defendants appear to argue that Plaintiff's Amended Complaint simply fails to state a claim for First Amendment retaliation.[3] (Defs.' Mem. at 11.)

Plaintiff filed her Memorandum in Opposition to the Motion to Dismiss on August 7, 2020, agreeing to dismiss Count II against the Board. (Pl.'s Resp. at 1, n. 1.) Plaintiff argues, however, that Count II states a claim against Dr. Carter, because Plaintiff has plausibly alleged a causal nexus between Plaintiff's protected activity and the nonrenewal of her contract. (Pl.'s Resp. at 7-13.) Defendants filed their Reply on August 17, 2020, (Defs.' Reply Mem. in Supp. of Mot. to Dismiss) ("Defs.' Reply") (ECF No. 19) agreeing that causation remains the only issue for the Court to decide, rendering the matter ripe for review.

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint or counterclaim; it does not serve as the means by which a court will resolve contests surrounding the facts, determine the merits of a claim or address potential defenses. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering a motion to dismiss, the Court will accept a plaintiff's well-pleaded allegations as true and view the facts in a light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, "the

---

[3] Defendants' qualified immunity argument largely focused on whether Plaintiff's claim arose from speech-based retaliation. (Defs.' Mem. at 10-11.) Plaintiff has since clarified that her claim rests on free association — and not speech-based — retaliation, thus rendering Defendants' qualified immunity argument (to the extent it relied on the "clearly established" prong) moot. (Pl.'s Resp. at 7, n. 2.)

6

tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

Under the Federal Rules of Civil Procedure, a complaint or counterclaim must state facts sufficient to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). As the Supreme Court opined in *Twombly*, a complaint or counterclaim must state "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action," though the law does not require "detailed factual allegations." *Id.* (citations omitted). Ultimately, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," rendering the right "plausible on its face" rather than merely "conceivable." *Id.* at 555, 570. Thus, a complaint or counterclaim must assert facts that are more than "merely consistent with" the other party's liability. *Id.* at 557. And the facts alleged must be sufficient to "state all the elements of [any] claim[s]." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002) and *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

### III. ANALYSIS

#### A. The Court Dismisses Count II of the Amended Complaint As Alleged Against the Board.

As discussed above, the Board argues that the Amended Complaint fails to state a § 1983 claim against the Board, because Plaintiff fails to allege that the nonrenewal of her contract resulted from an unconstitutional policy or custom. (Defs.' Mem. at 8-10.) Plaintiff does not challenge that argument, and now agrees that the Court should dismiss Count II insofar as it states a claim against the Board. (Pl.'s Resp. at 1, n. 1.)

Accordingly, because Plaintiff concedes that she could not state a claim against the Board under any set of facts, the Court will dismiss Count II against the Board with prejudice. *Billups v. United States*, 433 F. Supp. 3d 916, 923 n. 1 (E.D. Va. 2020).

### B. The Amended Complaint Plausibly Alleges a Causal Nexus between Plaintiff's Protected Activity and the Nonrenewal of Her Contract.

Defendants argue that Plaintiff fails to state a plausible free association retaliation claim against Dr. Carter, because Plaintiff alleges no facts that show a causal nexus between Plaintiff's membership in the NAACP and the nonrenewal of her contract. (Defs.' Mem. at 4-8.) Specifically, Defendants argue that the fifteen-month time gap between when Dr. Carter learned of Plaintiff's NAACP membership (in February 2018) and the decision not to renew her contract (in May 2019) negates the inference of a causal nexus between the two events. (Defs.' Mem. at 7-8.) Moreover, Defendants contend that Plaintiff has no good explanation for that temporal gap, and that her allegations of ongoing animus lack the requisite severity to excuse the absence of such an explanation. (Defs' Reply at 3-9.) In any event, Defendants argue that the praise that Plaintiff received from Dr. Carter in June and August of 2018 breaks the causal chain between the February 2018 comment and the May 2019 decision not to renew Plaintiff's contract. (Defs.' Reply at 5.) Finally, Defendants argue that they did not provide inconsistent reasons for Plaintiff's termination. (Defs.' Reply at 6.) According to Defendants, Dr. Carter's "different direction" statement and Plaintiff's alleged misconduct that the Board reported to the Virginia Employment Commission do not constitute mutually exclusive reasons for Plaintiff's termination. (Defs.' Reply at 6.)

Plaintiff concedes that the retaliation in this case did not closely follow the protected activity. (Pl.'s Resp. at 8.) Nonetheless, Plaintiff argues that she has offered a sufficient explanation for the delay — namely, that Dr. Carter demonstrated ongoing animus toward her

8

during the intervening period, and that Defendants provided inconsistent reasons for her termination, which indicates pretext. (Pl.'s Resp. at 8.) To that end, Plaintiff argues that her Amended Complaint depicts a pattern of antagonism by Dr. Carter that adequately explains the temporal delay. Specifically, Plaintiff points to four actions that Dr. Carter took that Plaintiff argues evince a plausible inference of retaliatory animus sufficient to show causation: (1) Dr. Carter's decision to ostracize Plaintiff beginning in the Fall of 2018 (by, for example, no longer including in her meetings that she previously attended); (2) Dr. Carter asking Plaintiff's co-workers if they had any issues with Plaintiff in January 2019; (3) Dr. Carter's hiring of a new supervisor who immediately reprimanded Plaintiff on an unfounded allegation; and, (4) Dr. Carter's decision not to renew Plaintiff's contract before the completion of Plaintiff's improvement plan. (Pl.'s Resp. at 9.) The Court agrees with Plaintiff.

To state a First Amendment retaliation claim under § 1983, Plaintiff — as a public employee — must show that: (1) she acted as a citizen, not as an employee, on a matter of public concern; (2) her interest in the expression at issue outweighed the employer's interest in providing effective and efficient services to the public; and, (3) there existed a sufficient causal nexus between the protected expression and the alleged adverse employment action. *Minnick v. County of Currituck*, 521 F. App'x 255, 262-63 (4th Cir. 2013) (citing *McVey v. Stacy*, 157 F.3d 271, 277-78 (4th Cir. 1998)). As mentioned, Defendants agree that the third prong, causation, constitutes the dispositive issue for the Court to resolve. (Defs.' Reply at 1; Defs.' Mem. at 5 n. 2 ("For the purposes of this Motion only, the [Board] assumes that the Amended Complaint satisfies the first two elements of a First Amendment retaliation claim for a public employee [. . .].").

The causation analysis hinges on two inflection points — temporal proximity or, alternatively, a "sufficient explanation" for the delay between the protected activity and the alleged retaliation. *Reardon v. Herring*, 201 F. Supp. 3d 782, 785 (E.D. Va. 2016). Here, Plaintiff cannot rely on temporal proximity, because a period of approximately fifteen months separated the protected activity (Dr. Carter's awareness of Plaintiff's NAACP membership), and the adverse employment decision (Dr. Carter's decision not to renew Plaintiff's employment contract). *See Penley v. McDowell Cty. Bd. of Educ.*, 876 F.3d 646, 656-57 (4th Cir. 2017) (finding an eight- to nine-month gap between the protected activity and the adverse employment action too distant to raise an inference of causation). As such, Plaintiff must provide a sufficient explanation for that fifteen-month time gap.

"In cases where temporal proximity . . . is missing, courts may look to the intervening period for other evidence of retaliatory animus." *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (internal quotations and citations omitted). "Specifically, evidence of recurring retaliatory animus [and conduct] during the intervening period can be sufficient to satisfy the element of causation." *Id.* (citations omitted). Additionally, courts will examine "inconsistent reasons for termination indicative of pretext" when evaluating whether a plaintiff has adequately bridged the temporal gap. *Carmack v. Virginia*, 2019 WL 1510333, at *6 (W.D. Va. April 5, 2019); *Willis v. City of Virginia Beach*, 90 F. Supp. 3d 597, 612 (E.D. Va. 2015).

The Court finds that Plaintiff's allegations support the inference that a sufficient causal nexus existed between Dr. Carter's knowledge of Plaintiff's NAACP membership in February 2018 and the nonrenewal of Plaintiff's employment contract in May 2019. Plaintiff alleges, and the Court accepts as true, four discrete incidents of retaliatory animus that transpired during the relevant intervening period. First, Plaintiff alleges that at the beginning of the following school

year, Dr. Carter began to ostracize Plaintiff by not inviting her to meetings and by no longer speaking to her. (Am. Compl. ¶ 15.) Additionally, Plaintiff cites specific instances illustrative of retaliatory animus, such as when Dr. Carter solicited complaints about Plaintiff from her co-workers in January 2019, and when Plaintiff's newly appointed supervisor reprimanded Plaintiff based upon a false allegation. (Am. Compl. ¶ 16.) Finally, Plaintiff alleges that Defendants prescribed her a four-week improvement plan, but then decided to terminate her before she could even complete it. (Am. Compl. ¶ 18.) Plaintiff further alleges that Dr. Carter and the Board provided inconsistent explanations for terminating Plaintiff. (Am. Compl. ¶¶ 18-20.) Specifically, Dr. Carter suggested that Defendants were simply going in a "different direction" with the food service department, while the Board cited to specific incidents of alleged misconduct to justify its decision. (Am. Compl. ¶¶ 18-20.)

Still, Defendants contend that Plaintiff cannot provide a valid reason to explain the temporal gap. (Defs.' Reply at 3-5.) Relying on the decision in *Reardon*, Defendants urge that a plaintiff can only rely on acts showing animus or antagonism to show causation when the conduct is "*coupled with* valid reasons why the adverse action was not taken immediately." (Defs.' Reply at 3.) (citing *Reardon*, 201 F. Supp. 3d at 785). Likewise, Defendants argue that *Reardon* dictates that the alleged acts of animus here do not rise to the requisite level of severity necessary to excuse the temporal gap. (Defs.' Reply at 8-9.)

The Court finds Defendants' reliance on *Reardon* unavailing. In *Reardon*, the court analyzed three factual dynamics that allow a plaintiff to bridge the temporal gap and overcome the causation hurdle. 201 F. Supp. 3d 782, 785-88. Specifically, a plaintiff can show causation by alleging: (1) continuing (and severe) retaliatory conduct and animus; (2) regular acts of animus or antagonism coupled with valid reasons why the adverse action did not immediately

11

follow the protected activity; or (3) that the employer took adverse action at the first convenient opportunity, even without a showing of animus. *Id.*

Here, Plaintiff's allegations arguably meet all three factual paradigms. Indeed, Plaintiff's allegations here are sufficiently severe to fall within the first category identified by this Court in *Reardon*. While the plaintiff in *Reardon* alleged that her supervisor subjected her to petty humiliations (e.g., by rarely talking to her, not giving her an earned window office, and not circulating congratulatory e-mails), Plaintiff here alleges retaliatory conduct that affirmatively interfered with her ability to perform her job. *Reardon*, 201 F. Supp. 3d at 788. For example, Plaintiff alleges continued professional ostracism and mistreatment, as well as the issuance of a written reprimand based on a false accusation. Accordingly, the retaliatory animus that Plaintiff alleges here far exceeds that alleged in *Reardon*. Additionally, as noted earlier, Plaintiff alleges that the nonrenewal of her contract in May 2019 represented the "very first opportunity" for Defendants to retaliate against her. (Am. Compl. ¶ 31.) Although the factual record may show otherwise once developed through discovery, the Court accepts that allegation at this stage of the litigation.

Finally, the Court agrees that Defendants provided inconsistent reasons for Plaintiff's termination, providing additional evidence of pretext. Indeed, Dr. Carter's neutral comment that Defendants were merely going in a "different direction" stands in stark contrast to the Board's official position vis-à-vis the Virginia Employment Commission that Plaintiff engaged in active workplace misconduct. Although Defendants' argument that these two statements "[are] not mutually exclusive" may ring true as a matter of strict logic, that argument simply fails on a motion to dismiss, when the Court must construe the facts in Plaintiff's favor.

Finally, the Court rejects Defendants' argument that Dr. Carter's praise in the summer of 2018 served to break the causal chain. Considering the consistent retaliatory animus otherwise alleged, coupled with Plaintiff's averment that not renewing her contract in May 2019 represented the first opportunity to truly retaliate against her, the Court finds that this fact may weigh in favor of Defendants at summary judgment, but it does not effect a complete break in the causal chain.

For these reasons, Plaintiff states a retaliation claim against Dr. Carter, and the Court will deny in part Defendants' Motion to Dismiss (ECF No. 11) as to Count II of Plaintiff's Amended Complaint.

### IV. CONCLUSION

For the reasons set forth above, the Court hereby GRANTS IN PART and DENIES IN PART the Defendants' Motion to Dismiss (ECF No. 11), and DISMISSES WITH PREJUDICE Count II of Plaintiff's First Amended Complaint (ECF No. 9) to the extent it states a claim against the Board.

Let the Clerk file a copy of this Memorandum Opinion electronically and notify all counsel of record.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Date: September 15, 2020